**Edwin Arnoldo CAMPOS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–08–00616–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 3, 2010.

Rehearing Overruled July 27, 2010.

Sarah V. Wood, Richmond, TX, for Appellant.

April Adams Silva, Assistant District Attorney, Kenneth Magidson, Harris County District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Edwin Arnoldo Campos, was charged by indictment with the first-degree-felony offense of theft of property valued, in the aggregate, at greater than $200,000, to which appellant pleaded not guilty. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(7) (Vernon Supp. 2009). A jury found appellant guilty and assessed

his punishment at 6 years' confinement and a $10,000 fine.

In two points of error, appellant (1) challenges the legal and factual sufficiency of the evidence and (2) contends that the trial court erred by admitting certain evidence.

We affirm.

## Background

According to the record, the 3M company is a $163–billion–dollar–corporation with 35,000 employees in the United States. The company has a small warehouse distribution center in Houston which is staffed by one permanent 3M employee and by four temporary workers provided by a staffing agency, Volt Services.

At all times relevant to this case, appellant was an employee of Volt. From 2004 to 2006, Volt assigned appellant to work in the 3M warehouse. Appellant's duties included shipping, receiving, and inventorying window-tinting materials. While working in the 3M warehouse, appellant began operating an automotive window-tinting service.

Rick Knight, a 3M sales representative for the territory in which the Houston warehouse was located and the sole 3M employee at the Houston warehouse, testified that he worked with appellant at the warehouse and that appellant had expressed an interest in learning how to perform automotive window tinting. Knight testified that he had allowed appellant to practice with some used sample rolls. Eventually, appellant started a business called "3rd Coast Tinters," and appellant was allowed to purchase materials from the warehouse for use in his business. Over time, inventory shortages began to occur.

Rhonda Holmes, a Volt employee assigned to work as a customer service representative at the 3M Houston warehouse, testified that her responsibilities included performing monthly inventories and comparing actual counts against the computer. Holmes testified that she began to notice discrepancies. Holmes testified that she used to see appellant at the warehouse on weekends tinting cars and that "we all knew" that appellant was allowed to purchase tinting materials.

Knight notified 3M's corporate headquarters in St. Paul, Minnesota of the inventory shortages. Knight testified that 3M representatives came down and performed an inventory of the Houston warehouse in February 2006. An inventory shortage was realized, but it was thought to be the result of computer entry errors. After the inventory was reconciled, business continued as usual. In August 2006, however, another inventory was performed, which again revealed a substantial shortage—over 400 rolls of automotive tinting materials had disappeared. Knight explained that one roll of material tints the windows of approximately 10 cars.

In October 2006, 3M in St. Paul hired a private investigator, Jimmy Garcia, to investigate the inventory shortages. Garcia investigated appellant's tinting business. Garcia found 3rd Coast Tinters on the internet, and he called to set up an appointment to bring in a vehicle for window tinting service. Garcia testified that appellant answered the telephone and made the appointment. Appellant had Garcia meet him at the 3M warehouse. He then told Garcia to drive around back and into the warehouse. Appellant and Garcia agreed on a price of $170. Garcia testified that he saw appellant remove a box of tinting material from amongst several other boxes in one of the storage bins in the warehouse. The box was new and had not been opened. Appellant said that he was a manager at 3M and that he was granted substantial liberties. A person named

Raul installed the tint. Upon completion of the work, Garcia paid appellant in cash, and appellant signed a 3M warranty card as a receipt. Garcia asked appellant to give him the box that the tinting materials had come in so that he could store some old battery cables. Appellant complied. The box was admitted into evidence at trial. Garcia reported his experience to Rick Ostrom, a 3M security director in St. Paul.

On November 20, 2006, 3M sent Ostrom, accompanied by Kim Volner, an audit manager based in 3M's St. Paul offices, to the Houston warehouse to investigate the shortages. Volner testified at trial that she was responsible for conducting all of 3M's internal investigations and that 3M had authorized her to speak on behalf of the corporation in this case.

Volner and Ostrom interviewed the warehouse personnel, including appellant. Volner testified that, after some discussion, appellant admitted to her that he had taken tinting materials from the warehouse without authorization and that he had sold the materials for cash. In addition, appellant told Volner that he had brought customers into the warehouse on weekends and had provided automotive window tinting in exchange for cash, utilizing materials that he took from the 3M warehouse. Volner testified that appellant did not have authorization to use, to remove, or to sell 3M's non-sample materials. Volner said that appellant was "very apologetic," that he "used the word 'stole' several times," and that he promised to "pay us back."

Appellant also gave a written statement to Volner, which was admitted at trial without objection and states as follows:

I Edwin A. Campos hereby make the following statement to Richard L. Ostrom, 3M Corpor[ate] Security, and Kim Volner, 3M Corporate Audit[or.] The following statement is voluntary, no promises or threats have been made to make this statement.

I started 3rd Coast Tinters in 2004 and purchased some film, then I would take a roll and sell it to people. I would also install it here at the 3M facility. I solely acted alone and had no partners. I would sell the film for cash and when I installed it here I would pay the tinter cash with no records. I know this was wrong and am willing to pay the consequences. I am deeply sorry and are [sic] willing to pay for it even if it takes me a life long time. I would sell it to Raul and Alfonso. I would sell it to other dealers and meet people at locations for cash. I paid bills with the money and took some trips abro[a]d. As an example I had two people in on Sunday and I had Raul install it this Sunday. I strongly believe I was breaking the law and are [sic] willing to pay for my mistakes.

I have read this statement and signed it because it is true and correct.

I have initialed each paragraph and signed the statement.

After appellant confessed, Volner performed an inventory of the warehouse that same day.

At trial, Volner testified that normal inventory adjustments for the Houston warehouse were less than one percent annually. In 2005, however, the warehouse suffered an inventory loss of 17 percent. In 2006, the losses had risen to 37 percent. Appellant ceased working at the warehouse in November 2006. In 2007, the inventory adjustment was 1.2 percent. An exhibit depicting the annual inventory losses was admitted at trial without objection.

State's Exhibit 11, showing that the total inventory losses suffered as of August

2006 were $680,824.32, was admitted without objection.

In addition, the State sought to admit Exhibit 12, Volner's November 20, 2006 inventory showing additional losses of $90,960.99, as a business record. As discussed in more detail below, appellant objected, contending that the inventory had been taken just after his confession. Therefore, he contended, it was prepared in anticipation of litigation and was not subject to the business records exception to the hearsay rule. Appellant also objected to the admission of Exhibit 12 on the ground that it violated his Sixth Amendment right to confront the witnesses against him. A person named "John" was noted on the inventory sheets as having assisted with the inventory count, but Volner could not identify him. At a hearing outside the presence of the jury, Volner testified that the inventory was performed to assess the extent of the losses as of that date and that, although she could not remember "John," anyone assisting in the inventory that day would have been a trusted 3M employee. Appellant's objections were overruled, and Exhibit 12 was admitted.

Bryan Vaclavik, chief fraud examiner at the Harris County District Attorney's Office, testified that appellant's bank records reflect that, during the period from 2004 to 2006, there were regular payroll deposits from Volt Services and there were unidentified deposits totaling $114,937.38. The list of unidentified deposits was admitted at trial without objection.

## Legal and Factual Sufficiency

In his first point of error, appellant contends that the evidence is legally and factually insufficient to support his conviction "because the State failed to prove an essential element of the crime as indicted, that Kim Volner was the owner of the property." Appellant combines his legal and factual sufficiency discussions. However, we will examine appellant's claim of legal insufficiency before, and separately from, his claim of factual insufficiency.[1]

### A. Standards of Review and Applicable Legal Principles

 We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007); *Parker v. State,* 192 S.W.3d 801, 804 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). We "may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Williams,* 235 S.W.3d at 750. We give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Our duty is to ensure that the evidence presented actually supports a conclusion that the defendant committed the offense. *Id.*

 We begin our factual sufficiency review with the assumption that the evi-

---

1. The court of criminal appeals has instructed that

determining the legal and factual sufficiency of evidence requires the implementation of separate and distinct standards.... Courts and litigants should not combine their legal and factual sufficiency analyses.

So while we recognize that any analyses of the facts in a given case will naturally overlap, a separate review under the applicable standard is necessary to ensure that the law was properly applied.
*Laster v. State,* 275 S.W.3d 512, 519 (Tex. Crim.App.2009).

dence is legally sufficient. *Laster v. State*, 275 S.W.3d 512, 518 (Tex.Crim.App.2009). Evidence that is legally sufficient, however, can be factually insufficient if (1) the evidence supporting the conviction is too weak to support the fact finder's verdict, or (2) considering conflicting evidence, the fact finder's verdict is "against the great weight and preponderance of the evidence." *Id.* We consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict. *Id.* We recognize that the factfinder is in the best position to evaluate the credibility of witnesses, and we afford due deference to the factfinder's determinations. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim. App.2006). We may only find the evidence factually insufficient when necessary to "prevent manifest injustice." *Laster*, 275 S.W.3d at 518. In such case, we must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict. *Id.*

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2009). "Appropriate" means (A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another or (B) to acquire, or otherwise exercise control over, property other than real property. *Id.* § 31.01(4). Appropriation of property is unlawful if, inter alia, it is without the owner's effective consent. *Id.* § 31.03(b).

Pursuant to the Penal Code and as applicable herein, a person is an "owner" if he has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor. TEX. PENAL CODE ANN. § 1.07(a)(35) (Vernon Supp. 2009).

## B. Analysis

### 1. Legal sufficiency

■ Appellant first contends that the evidence of the element of ownership is legally insufficient because "Kim Volner was not the legal owner of the stolen property." Appellant does not challenge the evidence supporting any of the other elements of the offense.

■ It is undisputed that 3M, a corporation, was the actual lawful owner of the property at issue. The indictment alleged that, from 2004 through 2006, appellant appropriated window tinting material "owned by Kim Volner." Because a corporation cannot itself testify, when allegedly stolen property is owned by a corporation, it is proper and preferable for the indictment to allege that the property was taken from the custody and control of a natural person acting for the corporation. *See Freeman v. State*, 707 S.W.2d 597, 605 (Tex.Crim.App.1986); *Castillo v. State*, 469 S.W.2d 572, 573 (Tex.Crim.App.1971); *Lewis v. State*, 193 S.W.3d 137, 140 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (stating that when a corporation owns property at issue, State may allege ownership in "special owner"); *Villani v. State*, 116 S.W.3d 297, 306 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd); *Chowdhury v. State*, 888 S.W.2d 186, 187 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd).

■ Proof of ownership may be shown by circumstantial evidence. *Villani*, 116 S.W.3d at 306. The term "owner" is to be broadly defined to protect all ownership interests from criminal conduct. *See Freeman*, 707 S.W.2d at 603. Under the Penal Code, an "owner" includes one with (1) title to the property, (2) possession of the property, whether lawful or not, or (3) a greater right to possession of the property than the appellant. *See* TEX. PE-

NAL CODE ANN. § 1.07(a)(35)(A). "Possession" means actual care, custody, control, or management. TEX. PENAL CODE ANN. § 1.07(a)(39). When there are competing possessory interests, the accused must have exercised "unauthorized" control over the property. *Freeman*, 707 S.W.2d at 605.

Here, appellant does not dispute that he took tinting materials from the 3M warehouse through the course of his employment with Volt, without paying for them and without authorization, and that he then sold or used the materials to obtain cash that he kept for himself. As such, appellant exercised unauthorized control over the materials. *See id.* at 606. At the moment in time that appellant began taking the materials, he relinquished whatever possessory interest he had in those materials. *See id.* At that moment, "any person who established a possessory interest in the [materials] had a greater right to possession of the [materials] than did [appellant]." *See id.* at 605.

The State presented evidence that, at the time appellant unlawfully appropriated the materials at issue, Volner had a greater right to possession of those materials than did appellant. *See* TEX. PENAL CODE ANN. § 1.07(a)(35)(A); *Freeman*, 707 S.W.2d at 603.

Volner testified that she has been an employee of 3M for 21 years, that she is one of four auditing managers at 3M's corporate headquarters in St. Paul, Minnesota, and that she is legally authorized to act for 3M. In addition, the record shows that Volner is a shareholder in 3M.

"Proof of a management *position* alone is insufficient to sustain the ownership allegation absent some showing that the named owner had exercised some degree of care, custody, control, or management over the property allegedly stolen." *Freeman*, 707 S.W.2d at 603 (emphasis added).

Here, the record further shows that Volner's function at 3M was to perform internal auditing and investigations. When Knight reported the inventory losses at the Houston warehouse, 3M sent Volner to physically audit the inventory and investigate the losses. Traci Georgiou, a Volt employee assigned to work in the office at the 3M Houston location, testified that the tinting material at the Houston warehouse came from 3M's facility in St. Paul. From this evidence, the jury could have reasonably concluded that Volner did more than occupy a management position in the company; in addition to her status as a shareholder of 3M, she had management responsibilities that physically extended to 3M's window-tinting inventories at the Houston warehouse.

Volner and Knight each testified that appellant was never, at any time during his misappropriations, an employee of 3M; rather, he was an employee of Volt, a temporary staffing service. Volner and Knight each testified that appellant was not authorized to remove, use, or sell the materials at issue.

The jury could have reasonably concluded that Volner's right to possession of 3M's inventories was greater than that of appellant. *See* TEX. PENAL CODE ANN. § 1.07(a)(35)(A); *see Johnson v. State*, 606 S.W.2d 894, 895–96 (Tex.Crim.App.1980) (holding store employee who was employed to protect property and keep it from being stolen had greater right to possess); *Rabb v. State*, 681 S.W.2d 152, 154 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd) ("A person acting on behalf of a corporation, with managerial authority and responsibility over its goods, is the effective owner ...") (quoting *Cross v. State*, 590 S.W.2d 510, 511 (Tex.Crim.App.1979)).

Appellant contends that the evidence that Volner is an owner is legally insuffi-

cient because, during his course of thefts, Volner was not physically present at the warehouse and therefore could not have taken possession of, or have exercised physical control over, the materials at issue. In addition, appellant points out that Volner testified that she believed that she did not own or have physical control over the materials at issue at the time of the thefts.

■ That Volner was not physically present in the Houston warehouse, during the time of appellant's misappropriations, to physically exercise her right to possession of the materials at issue does not render the evidence legally insufficient. An owner need not be an exclusive owner or in actual possession of the property. *Sowders v. State*, 693 S.W.2d 448, 451 (Tex.Crim.App.1985). Under the Penal Code, the State need only show a superior right to possess. *See* TEX. PENAL CODE ANN. § 1.07(a)(35)(A).

We must give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Williams*, 235 S.W.3d at 750. The jury was free to accept or reject any portion of the testimony. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000). Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Volner was an owner, as defined in the Penal Code, of the materials at issue, during the time of appellant's commission of the offense, because Volner's right to possession of the materials was superior to that of appellant. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(35)(A), 31.03. We hold that the evidence is legally sufficient to support the jury's verdict. *See Williams*, 235 S.W.3d at 750.

## 2. Factual sufficiency

Appellant next contends that the evidence that Volner was the owner is factually insufficient. Appellant does not raise any new arguments or challenge the evidence supporting any of the other elements of the offense.

As discussed in the legal sufficiency analysis, the State was required to show that Volner was the owner of the window-tinting materials at the time of appellant's misappropriations. *See* TEX. PEN.CODE ANN. § 31.03; *Castillo*, 469 S.W.2d at 573.

The State presented evidence that Volner is a 3M shareholder; that she has been a 3M employee for 21 years; that she is an auditing manager; that she is an authorized agent for 3M; and that her function at 3M is to perform internal auditing and investigations. The record shows that when Knight reported the inventory losses at the Houston warehouse, 3M sent Volner to physically audit the inventory and investigate the losses. From this evidence, the jury could have reasonably concluded that Volner had physical management responsibilities over 3M's window-tinting inventories at the Houston warehouse. *See Freeman*, 707 S.W.2d at 603.

Conversely, the record shows that appellant was never, at any time during his appropriation of the materials at issue, an employee of 3M; rather, he was an employee of a temporary staffing service. Further, the record shows that appellant acted without authorization when he removed, used, and sold the materials at issue. The evidence supports that Volner's right to possession of 3M's inventories was greater than that of appellant. *See* TEX. PENAL CODE ANN. § 1.07(a)(35)(A). Hence, the jury could have reasonably concluded that Volner was the owner of the materials as alleged in the indictment.

As appellant contends, the record shows that, during the time that appellant was taking the window tinting materials, Volner was working at the 3M corporate offices in St. Paul, Minnesota, and that she was not physically working in the Houston warehouse. Further, Volner testified that she believed that she did not own, have possession of, or have control over the materials until such time as, in November 2006, 3M sent her to Houston to audit the inventory and investigate the losses.

These facts do not render the evidence factually insufficient. An owner need not be an exclusive owner or in actual possession of the property. *Sowders*, 693 S.W.2d at 451. Further, at the moment in time that appellant began taking the materials, he relinquished whatever possessory interest he had in those materials. *See Freeman*, 707 S.W.2d at 603.

We must give deference to the responsibility of the factfinder to fairly weigh evidence and to draw reasonable inferences from the facts. *See Marshall*, 210 S.W.3d at 625. We conclude that a rational jury could have concluded that Volner's right to possession was superior to appellant's right to possession.

Considering all of the evidence in a neutral light, we cannot conclude that the evidence supporting the conviction is too weak to support the fact finder's verdict or that the verdict is against the great weight and preponderance of the evidence. *See Laster*, 275 S.W.3d at 518. We hold that the evidence is factually sufficient to support the jury's verdict.

Accordingly, we overrule appellant's first point of error.

### November Inventory

In his second point of error, appellant contends that the trial court abused its discretion by "admitting records of the November 2006 inventory" as a business record. Appellant also contends that the trial court's admission of the inventory violated his Sixth Amendment right to confront witnesses.

 A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App.2003). An abuse of discretion occurs when the trial court acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *Galliford v. State*, 101 S.W.3d 600, 604 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). We will affirm the trial court's ruling if it lies within the zone of reasonable disagreement. *See Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App. 2002).

#### 1. Business Records

 Texas Rule of Criminal Evidence 803(6), the business records exception to the hearsay rule, permits a party to introduce

[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, . . . *unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.*

TEX.R. EVID. 803(6) (emphasis added). "Rule 803(6) does not require that the person authenticating the record be either the creator of the record or to have personal knowledge of the information recorded therein." *Canseco v. State*, 199 S.W.3d

437, 440 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). Rather, the testifying witness need only have knowledge of how the record was prepared. *Id.*

Records prepared in anticipation of litigation are excluded under the trustworthiness criterion of Rule 803(6), as emphasized above. *Sessums v. State,* 129 S.W.3d 242, 249 (Tex.App.-Texarkana 2004, pet. ref'd); *see Palmer v. Hoffman,* 318 U.S. 109, 110–15, 63 S.Ct. 477, 479–81, 87 L.Ed. 645 (1943) (holding that statements obtained in anticipation of litigation are not business records).

Here, the court conducted a hearing outside the presence of the jury to determine the admissibility of State's Exhibit 12. Exhibit 12 is a record of the warehouse inventory that was conducted by Volner on November 20, 2006. The exhibit shows the number of units of each type of material that the computer reflected should be in stock, the physical count of each type of material actually in the warehouse, the number of units missing, and the total value of the missing units.

Volner testified that the inventory records were kept in the ordinary course of business, that it was the regular practice of 3M to keep inventory records, and that the records were made by persons with knowledge of the events, at or near the time of the events. Hence, the State appears to have laid the proper predicate for admission of the inventory as a business record under Rule 803(6). *See* Tex.R. Evid. 803(6).

Appellant contends, however, that Exhibit 12 does not fall within the business records exception because it was created in anticipation of litigation—appellant having just, earlier the same day, confessed that he had been stealing materials from the warehouse. Volner testified that, when she went to the Houston warehouse on November 20, 2006, she did not know the source of the inventory discrepancies. She said that it was only after appellant confessed that morning that she knew she was dealing with theft. Volner testified that her count of the inventory depicted in Exhibit 12 was not done to substantiate appellant's theft or in preparation for litigation.

Volner also testified, however, that her inventory was performed after she received appellant's confession and with knowledge that there was a potential for civil and criminal liability. Specifically, Volner testified that the inventory was performed to "understand the full scope of our losses in order to understand what our recoveries would be." Hence, Volner's testimony shows that Exhibit 12, which depicts the items missing from the warehouse and the value of those items, was created for purposes of recovery, with knowledge that theft had taken place in the warehouse. *See Dixon v. State,* 940 S.W.2d 192, 195 (Tex.App.-San Antonio 1996, no pet.) (holding that list of missing items was not business record for purposes of the hearsay rule).

Further, the record shows that 3M hired Garcia to "investigate" appellant in October 2006; that Garcia contacted appellant on November 2, 2006; that Garcia brought a vehicle to appellant for tinting service on November 11, 2006; and that Garcia reported appellant's conduct to Ostrom. Hence, when Ostrom and Volner went to the Houston warehouse on November 20, 2006 and conducted the inventory that comprises Exhibit 12, appellant had already been under investigation by 3M.

Because the "circumstances of preparation" of Exhibit 12 "indicate [a] lack of trustworthiness," we conclude that Exhibit 12 does not comport with Rule 803(6). *See* Tex.R. Evid. 803(6); *Dixon,* 940 S.W.2d at 195. Thus, the trial court abused its dis-

cretion by admitting Exhibit 12 as a business record.

■■■ The erroneous admission of a hearsay statement constitutes non-constitutional error that is subject to a harm analysis. *See* TEX.R.APP. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim.App.1998). Non-constitutional error must be disregarded unless it affected a substantial right of the defendant. TEX. R.APP. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Crim.App.2001). A substantial right is affected when the error had a substantial and injurious effect in determining the verdict. *Johnson*, 43 S.W.3d at 4. A conviction should not be overturned for such error if this court, after examining the record as a whole, has fair assurance that the error did not influence the trial court or had but a slight effect. *See id.*

■■■ Having examined the record as a whole, the State's case against appellant was strong. Appellant does not contend on appeal that this alleged error contributed to his conviction. Rather, he contends that it contributed to his punishment, as follows: "It is entirely likely that the jury assessed punishment based on the dollar amount they believed stolen, particularly in light of the fact that they assessed a large fine."

The record shows that appellant was indicted for theft of property valued, in the aggregate, at over $200,000, which is a first-degree felony. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(7) (Vernon Supp. 2009). The range of punishment for a first-degree felony offense is confinement for 5 to 99 years, or life, and a fine not to exceed $10,000. *See* TEX. PENAL CODE ANN. § 12.32 (Vernon Supp. 2009).

Here, Volner testified that the total inventory losses suffered through August 2006, as reflected in Exhibit 11, were $680,824.32. Exhibit 11 was admitted without objection. Hence, the State showed that well over the aggregate value allegation was substantiated. *See Lehman v. State*, 792 S.W.2d 82, 85 (Tex.Crim.App. 1990). The jury assessed punishment at 6 years' confinement—one year over the statutory minimum. The jury also assessed a fine of $10,000, which is the statutory maximum. However, it is well below, and well supported by, the State's proof that appellant committed theft of property valued at $680,824.32. Given the level of theft that was proven without objection, we have fair assurances that the additional $90,960.99 appellant challenges either did not influence the jury or have more than a slight affect. *See Johnson*, 43 S.W.3d at 4.

Because, after examining the record as a whole, we cannot conclude that a substantial right was affected, the error must be disregarded. *See* TEX.R.APP. P. 44.2(b); *Johnson*, 43 S.W.3d at 4.

## 2. Confrontation Clause

At trial, Volner testified that she could not remember or identify a person named "John," who was noted in defense Exhibits 1 and 8 as having assisted in counting the inventory on November 20, 2006. Appellant complains that, because Volner could not identify "John," admission of Exhibit 12 violated his Sixth Amendment right to confront the witnesses against him.

■■■ A defendant's right to confrontation under the Sixth Amendment is violated when a witness is permitted to relate out-of-court "testimonial" hearsay statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004); *see De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim.App.2008). A statement is testimonial if it was made "under circumstances

which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford,* 541 U.S. at 52, 124 S.Ct. at 1364; *see De La Paz,* 273 S.W.3d at 680. Whether a statement is testimonial is a question of law. *See De La Paz,* 273 S.W.3d at 680. We review de novo the trial court's ruling admitting evidence over a confrontation objection. *Wall v. State,* 184 S.W.3d 730, 742 (Tex.Crim.App.2006).

Here, we need not determine whether Exhibit 12, the inventory report, is testimonial in nature. Even if we assume, without deciding, that the trial court erred by admitting Exhibit 12 on this basis, the error was not harmful.

When an error is of constitutional dimension, we assess harm under Rule 44.2(a). *See* Tex.R.App. P. 44.2(a); *Scott v. State,* 227 S.W.3d 670, 690 (Tex. Crim.App.2007) ("A violation of the Confrontation Clause is subject to harmless error analysis."). Under Rule 44.2(a), appellant's conviction must be reversed unless we determine, beyond a reasonable doubt, that the error did not contribute to the conviction or to the punishment. *See* Tex.R.App. P. 44.2(a). We assess whether there was a reasonable possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion. *Scott,* 227 S.W.3d at 690. Among the relevant factors to consider are (1) the importance of the evidence to the State's case; (2) whether the evidence was cumulative of other evidence; (3) the presence or absence of other evidence corroborating or contradicting the evidence on material points; and (4) the overall strength of the State's case. *Id.* We must also consider any other factor in the record that may shed light on the probable impact of the trial court's error on the minds of average jurors. *See id.* Ultimately, after considering these various factors, we may

not affirm unless we conclude beyond a reasonable doubt "that the error did not contribute to the conviction." *Id.* at 690–91.

Applying the relevant factors, we conclude appellant was not harmed by any erroneous admission of Exhibit 12 on this basis. Based on appellant's confession and the State's evidence that appellant had stolen $680,824.32 in materials, the importance of John's portion of Exhibit 12 was minimal, at best. Exhibit 12 was cumulative in that Exhibit 11 showed that well over the State's aggregate value allegation of $200,000 was substantiated. *See Lehman,* 792 S.W.2d at 85. Even without the evidence of John's data concerning a portion of the inventory, the State's case against appellant was strong. Accordingly, we conclude beyond a reasonable doubt the erroneous evidence, if any, did not contribute to appellant's conviction or punishment.

Accordingly, appellant's second point of error is overruled.

### Conclusion

We affirm the judgment of the trial court.