# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00023-CV

## In the Matter of S. A. M.

## FROM COUNTY COURT AT LAW NO. 1 OF CALDWELL COUNTY
## NO. 2321-12CC, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State filed a petition alleging that appellant S.A.M., who was fifteen years old at the time of the offense, had committed the offense of aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021 (aggravated sexual assault); Tex. Fam. Code § 53.012 (prosecuting attorney shall review allegations of delinquent conduct and may file petition requesting adjudication of child). About eight months later, the trial court signed an order finding that S.A.M. had engaged in the alleged delinquent conduct. *See* Tex. Fam. Code § 54.04 (disposition hearing and order). The court determined that S.A.M. was in need of placement outside of his home, placed him on probation until he turned eighteen, and deferred a decision regarding whether he should be exempt from sex-offender registration requirements until after he had completed treatment. *See* Tex. Code Crim. Proc. art. 62.351 (determining whether juvenile is exempt from sex-offender registration).

About five months later, the State filed a motion to modify, alleging that S.A.M. had violated the terms of his probation by being discharged unsuccessfully from his residential treatment center due to "treatment failure, creating an unsafe environment, and dishonesty in therapy in the Sex

Offender Treatment Program," and delivering a dangerous drug to another resident of the treatment center. The State also filed a motion to require S.A.M. to register as a sex offender. The trial court modified S.A.M.'s disposition, committing him to the Texas Juvenile Justice Department for an indeterminate amount of time, and ordered S.A.M. to register as a sex offender. *See generally id.* arts. 62.001-.408 (governing sex-offender registration). On appeal, S.A.M. argues that the trial court erred in admitting two of the State's exhibits because they contained inadmissible hearsay and there was a lack of trustworthiness in the method or circumstances of their preparation. We affirm the trial court's judgment.

During the hearing on the State's motion to modify S.A.M.'s disposition, the State offered a report by Kim Frueh, a therapist at the residential treatment center (Exhibit 1), and a packet of twenty-eight incident reports (Exhibit 7) prepared by various staff members of the center. Exhibit 1 was offered during testimony by Marty Litchfield, another therapist at the center, and S.A.M. objected that the exhibit contained hearsay and was not prepared by Litchfield. S.A.M. also objected to the report being offered as a business record, asserting that they had not been presented on file, *see* Tex. R. Evid. 902(10) (business records are admissible if kept in regular course of business, accompanied by affidavit, and "filed with the clerk of the court for inclusion with the papers in the cause . . . at least fourteen days prior to the day upon which trial of said cause commences"), they lacked a proper foundation, and Litchfield was not the treatment center's keeper of business records. Exhibit 7 was offered during testimony by Joe Ramirez, S.A.M.'s case manager at the center, and S.A.M. objected on the basis of hearsay and because Ramirez had not filled out the reports and was not the center's keeper of business records. Both times, the trial court overruled S.A.M.'s objections and admitted the exhibits.

We will assume without deciding that the reports were admitted in error because, based on this record, we have a fair assurance that S.A.M. was not harmed by their admission. The erroneous admission of evidence is non-constitutional error subject to harm analysis under rule 44.2(b) of the rules of appellate procedure. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008); *Campos v. State*, 317 S.W.3d 768, 779 (Tex. App.—Houston [1st Dist.] 2010, pet ref'd) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)); *see* Tex. R. App. P. 44.2(b) (error that does not affect "substantial rights" shall be disregarded). We will affirm the conviction if, in light of the entire record, we have "fair assurance" that the error did not influence the trial court or had at most a slight effect. *Taylor*, 268 S.W.3d at 592.

Exhibit 1 is a one-page document entitled, "Tejas 30 Day Progress Report." In it, S.A.M. rated his group participation, overall progress, level of deviant sexual thoughts, thinking errors, areas needing improvement, and the like. He also stated he had six days off the "Positive Peer List" because of fighting. Frueh added her own assessment, agreeing with S.A.M.'s fairly positive assessments of his progress and participation but stating that he had a "guarded" prognosis due to his ongoing impulsive behavior, lack of accountability, secret keeping, deviant fantasy, and use of intimidation or threats. She stated that although S.A.M. said he was ready to take a polygraph, she was "concerned about whether he'll pass." Exhibit 7 is a packet of 28 Incident Reports completed by the center's staff members.[1]

---

[1] The reported incidents included: whistling and talking during "noise out" and disregarding staff instructions to stop; refusing to follow staff directions; being passive aggressive in response to staff instructions; improperly giving another resident his shoe laces; needing his asthma inhaler when he had an ache in his chest; throwing a football at a peer; twice getting in fights with peers; possessing fairly inconsequential items of contraband; not being allowed to take a phone call from

3

In addition to the two disputed exhibits, the State also introduced:

• Another progress report by Litchfield and another therapist, prepared one month after Frueh's report (and about three weeks before S.A.M.'s discharge from the center). This report was significantly more negative and noted that S.A.M. engaged in "blaming and minimizing," gave an "inconclusive" polygraph, and was unprepared and uncooperative in therapy.

• A discharge summary prepared by Litchfield that states that S.A.M. had been advised by his attorney not to discuss or make admissions about the offense, which made progress in therapy "very difficult," and that even after he pled true to the allegations, he denied them and had an inconclusive polygraph test. Litchfield also stated that S.A.M. often came to therapy unprepared, refused to accept responsibility for the offense, and "demonstrated a number of problems that have been documented in over 60 Incident Reports," including refusing to complete therapy assignments, fighting, providing medication to a peer, possessing contraband, damaging property, and assaulting his peers. Litchfield recommended that S.A.M. (1) be discharged to continue treatment in a "more restrictive setting that can better handle his aggression and assaultive behaviors" and (2) be required to register as a sex offender due to his refusal to take responsibility for the offense and his continuing aggression toward others.

• Ramirez's discharge summary stating that S.A.M. was discharged because of an inconclusive polygraph, over 60 incident reports, and giving medication to a peer. Ramirez concluded that S.A.M. had created an unsafe environment for himself, his peers, and staff and was unwilling to be honest with staff members.

Litchfield testified that S.A.M. did not make progress in treatment, came to group therapy unprepared, and was involved in numerous incidents. He said that even in the center's very controlled environment, S.A.M. was able to endanger his peers, and he believed S.A.M. posed a danger to the public and should be required to register as a sex offender. Ramirez testified about the

his mother due to center rules governing when a resident may receive a phone call; telling his mother that a staff member had restrained him by choking him, putting his knee on S.A.M.'s throat, and twisting S.A.M.'s arm (that staff member was fired for violating center procedures and not using "prudent judgment" in restraining S.A.M.); reporting that he felt dizzy and "weird" and being given water by the responding staff member; passing a silly note to a peer; repeatedly neglecting his therapy and disregarding instructions to work during therapy time; and giving his psychotropic medication to a peer.

incident reports and said that although he was never personally involved in one of the rule-breaking incidents, he would interact with S.A.M. within a few days after each incident. He said S.A.M. never showed significant remorse for any of the incidents and usually said he would try to do better. Ramirez said S.A.M.'s "behavior was up and down. . . . [H]e kind of had a cycle of he would maintain for a while then he would mess up again." Ramirez also said that neglect of therapy raised a red flag for the treatment center and its staff. Finally, Keith Bradbury, administrator of the treatment center, testified that S.A.M. was discharged from the program because he gave psychotropic medication to another resident and was not truthful in his therapy.

S.A.M. testified and admitted that he gave one of his medications to a fellow resident, saying he did not know he was giving the other child a dangerous drug and that he thought he was giving the resident "something that he already had before." He denied the validity of the incident reports, saying that the staff was sneaky and disrespectful, the reports were unjustified, and, "I would barely do anything over there to get in trouble and I'd still wind up getting in trouble."

Almost all of the information contained in the reports, certainly about the most serious and damaging allegations, was provided through testimony (Litchfield, Ramirez, Bradbury, and S.A.M. himself) and the State's other exhibits. S.A.M. argues that harm is indicated by the trial court's referring to the incident reports as evidence that S.A.M. was not willing to follow the rules of the treatment center, but in light of all of the court's remarks and the overall weight of the evidence, we conclude that the disputed exhibits had little, if any, effect on the trial court's decision to modify S.A.M.'s disposition and order him to register as a sex offender. *See id.* We overrule S.A.M.'s issues and affirm the trial court's judgment.

5

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   September 11, 2014