

# IN THE
## TENTH COURT OF APPEALS

### No. 10-22-00142-CR

TAEKEON A. MODESTER,

                                                            Appellant

 v.

THE STATE OF TEXAS,

                                                            Appellee

From the County Court at Law
Navarro County, Texas
Trial Court No. C40879-CR

## MEMORANDUM  OPINION

In two issues, appellant, Taekeon A. Modester, challenges his conviction for two counts of aggravated sexual assault of a child.  *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B).  Specifically, Modester complains that:  (1) he was egregiously harmed by the use of repealed language on good-conduct time in the punishment charge; and (2) the trial court erred by admitting the entirety of the forensic interview of the child victim over his hearsay objection.  We affirm.

**The Trial Court's Sealing Orders**

Before we can analyze Modester's issues on appeal, we must address the appellate record.[1] On April 22, 2022, the trial court signed an order sealing "the entire Reporter's Record" in this matter. Thereafter, on May 18, 2022, upon its own motion and without any further explanation or citation to authority, the trial court signed an order sealing "the entire Clerk's Record and Reporter's record."

On August 25, 2022, we abated and remanded this matter to the trial court to make findings of fact and conclusions of law concerning "1) under what statutory or case authority the records are ordered to be sealed; and 2) whether the briefs in this cause should be filed under seal; and/or 3) whether the clerk's record and reporter's record should remain under seal." On September 15, 2022, the trial court made several findings of fact and the following conclusions of law, which are relevant to the analysis of this case:

**CONCLUSIONS OF LAW**

1. Texas Rules of Civil Procedure 76a regarding sealing records and that statute governs criminal cases.

---

[1] We recognize that neither party has complained on appeal about the trial court's sealing actions. However, because the sealing of the entire Clerk's and Reporter's Records impacts this Court's ability to address the issues raised by the parties without violating the trial court's sealing orders, we address the propriety of the trial court's sealing order. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."), 47.3 ("All opinions of the courts of appeals are open to the public and must be made available to public reporting services, print or electronic."). Furthermore, the fact that this opinion is designated as "do not publish" is of no consequence because this opinion will be made available to public reporting services, print or electronic, pursuant to Texas Rule of Appellate Procedure 47.3. *See id.* at R. 47.3. The "do not publish" designation mostly pertains to the precedential value, or lack thereof, of an opinion, rather than the availability of the opinion and its contents to the public. *See id.* at R. 47.2(b), 47.7(a).

2. The Texas Constitution, Article 1, § 30(a)(1), states that a crime victim has the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process.

3. Texas Rules of Appellate Procedure, 109.002(d), states on the motion of the parties or on the Court's own motion, the Appellate Court, in its opinion, may identify the parties by fictitious names or by their initials only.

4. Further, even the Federal rules find that the child's rights to privacy and the protection of the child are very serious and should be taken very serious, so long as it does not keep such disclosure from the defendant or defendant's counsel. (See 18 U.S. Code § 35.09).

5. Each of the above rules identifies how seriously a victim's rights to privacy and protection should be taken. This Court would assume that to be even more of a serious matter when the State had not used a fictitious name or initials in the original criminal case.

6. In this case, the victim was related to the defendant by blood, through the victim's father.

7. Ordering the records to be sealed protects this child's rights to privacy, as well as her rights to protection and does not keep disclosure from the defendant or defendant's counsel. In this case, it also protects this child's family, also.

8. The Court could have ordered the District Clerk and/or the Official Court Reporter to go through their records and redact the name of the victim; however, that is a tedious task that is not theirs to take on, but is the attorneys and would further cause them possible harm if they failed to redact a name by accident.

9. Based upon the foregoing, the Court has the authority to Order the records sealed. If this Honorable Court does not believe so, the Court will rescind the Order Sealing Records immediately once it is advised to do so by this Honorable Court.

10. Based on the Court's Order to Seal the Records in this case, the briefs in this case should be filed under seal, as well.

11. Additionally, the Clerk's record and Reporter's record should both remain under seal.

As stated above, the primary authority relied upon by the trial court to seal the entire Clerk's and Reporter's Records is Texas Rule of Civil Procedure 76a. The Texas Court of Criminal Appeals has explained that the Texas Rules of Civil Procedure do not apply in criminal cases, except for a few carved-out exceptions that do not apply here. *See Ex parte Donaldson*, 86 S.W.3d 231, 233 (Tex. Crim. App. 2002); *see also $100,210.00 in U.S. Currency v. State*, No. 02-22-00016-CV, 2022 Tex. App. LEXIS 9378, at *21 (Tex. App.—Fort Worth Dec. 22, 2022, no pet.) (mem. op.); *In re Garcia*, No. 02-20-00161-CV, 2020 Tex. App. LEXIS 6723, at *6 (Tex. App.—Fort Worth Aug. 20, 2020, no pet.) (mem. op.). In fact, Texas Rule of Civil Procedure 2, entitled "Scope of Rules," specifically provides that: "These rules shall govern the procedure in justice, county, and district courts of the State of Texas in all actions of a *civil* nature, with such exceptions as may be hereinafter stated." TEX. R. CIV. P. 2 (emphasis added). Furthermore, nothing in Rule 76a states that the rule applies to criminal proceedings, and we have not found any cases where Rule 76a was applied to criminal proceedings, such as this.

Additionally, none of the other bases articulated by the trial court provide sufficient support for sealing the entire Clerk's and Reporter's Record. Neither article 1, section 30 of the Texas Constitution, the Texas Rules of Appellate Procedure, nor the portion of the United States Code cited by the trial court authorizes the trial court to seal

the entire Clerk's and Reporter's Record on its own motion. While we share the trial court's concern for protecting the privacy rights of crime victims, the trial court has not provided any relevant legal support for the sealing actions in this case. As such, we conclude that the trial court's sealing order is void. *Cf. Nix v. State*, 65 S.W.3d 664, 667-68 (Tex. Crim. App. 2001) ("The void judgment exception recognizes that there are some rare situations in which a trial court's judgment is accorded no respect due to a complete lack of power to render the judgment in question. A void judgment is a 'nullity' and can be attacked at any time." (internal footnotes omitted)); *see Masa Custom Homes, LLC v. Shahin*, 547 S.W.3d 332, 338 (Tex. App.—Dallas 2018, no pet.) (concluding that when a judge has no authority to render an order or judgment, that order or judgment is void). And as such, we dissolve the trial court's sealing orders signed on April 22, 2022 and May 18, 2022.

## The Jury Charge

In his first issue, Modester contends that he was egregiously harmed by the trial court's use of repealed language on good-conduct time in the punishment charge.

STANDARD OF REVIEW

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether the charge contains error. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If the jury charge contains error, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). The court will

reverse if an error is properly preserved by objection and is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, where a party does not properly preserve error by proper objection, the court will only reverse for egregious harm, meaning Modester did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, Modester must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Modester did not object in the trial court to the punishment charge; thus, he must show egregious harm. *See Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider the jury charge, the state of the evidence, the arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

APPLICABLE LAW & DISCUSSION

A jury charge contains error when it does not follow the applicable law. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14; *Taylor v. State*, 332 S.W.3d 483, 488-89 (Tex. Crim. App. 2011). As relevant here, the Texas Legislature changed the parole instructions on September 1, 2019. *See* Act of May 16, 2019, 86th Leg., R.S., ch. 260, §§ 2-3, 2019 Tex. Sess.

Law Serv. 446, 448.  This change removed references to "good conduct time," which the Legislature believed would confuse jurors.  *Id.*  In the instant case, the trial court's charge included language that has been repealed by the Legislature.  Thus, the inclusion is erroneous.  *See* TEX. CODE CRIM. PROC. ANN. art. 36.14; *see also Jones v. State*, No. 10-19-00350-CR, 2021 Tex. App. LEXIS 7622, at **8-9 (Tex. App.—Waco Sept. 15, 2021, no pet.) (mem. op., not designated for publication) (concluding that the trial court erred in submitting instructions considering good-conduct time after the Legislature removed this from the jury charge, but ultimately concluding that the error was harmless because the charge included language to disregard parole law and good-conduct time).  The State concedes that the instruction given by the trial court regarding parole was erroneous.

Despite the erroneous instructions regarding good-conduct time, we cannot say that Modester was egregiously harmed.  The trial court included the following instruction after the erroneous instruction:

> You may consider the existence of parole law and good conduct time.  *However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.  You are not to consider the manner in which the parole law may be applied to this particular defendant.*

(Emphasis added).  We presume that the jury followed the trial court's charge instructions.  *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002).  The instruction given by the trial court prevents harm to Modester by directing the jury not to consider parole and good-conduct time in their punishment assessment.  *See Alaniz v. State*, 648 S.W.3d 657, 659 n.2, 661-64 (Tex. App.—Eastland 2022, no pet.); *Igo v. State*, 210 S.W.3d

645, 647 (Tex. Crim. App. 2006); *Newman v. State*, 49 S.W.3d 577, 581 (Tex. App.—Beaumont 2001, pet. ref'd); *see also West v. State*, No. 10-20-00087-CR, 2022 Tex. App. LEXIS 2424, at *8 (Tex. App.—Waco Apr. 13, 2022, no pet.) (mem. op., not designated for publication); *Jones*, 2021 Tex. App. LEXIS 7622, at *10. Further, there is nothing in the record to indicate that the jury was confused by the trial court's charge.

In addition to the foregoing, neither party presented any evidence about good-conduct time. Moreover, neither party mentioned good-conduct time in their closing argument. The focus of the State's closing argument was on the nature and circumstances of the offense and the punishment-phase evidence. And while the jury did transmit two notes to the trial court, both notes asked whether the two counts would be served concurrently or consecutively. Neither note asked the trial court about parole or good-conduct time. *But see Hooper v. State*, 255 S.W.3d 262, 272 (Tex. App.—Waco 2008, pet. ref'd) ("When there is a note from the jury regarding parole or good-conduct time, courts are more prone to find egregious harm." (internal citations omitted)).

Considering all the relevant *Almanza* factors, we cannot say that Modester was egregiously harmed by the erroneous jury instruction on good-conduct time. Accordingly, we overrule Modester's first issue.

**The Forensic Interview**

In his second issue, Modester complains that the trial court abused its discretion by admitting the entirety of the forensic interview of the child victim over his hearsay objection.

STANDARD OF REVIEW & APPLICABLE LAW

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Hearsay statements are generally not admissible unless the statement falls within a recognized exception to the hearsay rule. *Id.* at R. 802; *see Taylor v. State*, 268 S.W.3d 571, 578 (Tex. Crim. App. 2008). The rule of optional completeness, as outlined in Texas Rule of Evidence 107, is one such rule. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007) (internal citation omitted).

The rule of optional completeness "is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party. *Id.* at 218 (internal citation

omitted). "It is designed to reduce the possibility of the jury receiving a false impression from hearing only part of some act, conversation, or writing." *Id.* (internal citations omitted). "Rule 107 does not permit the introduction of other similar, but inadmissible, evidence unless it is necessary to explain properly admitted evidence." *Id.* (internal citations omitted). "Further, the rule is not invoked by the mere reference to a document, statement, or act." *Id.* (internal citations omitted). "And it is limited by Rule 403, which permits a trial judge to exclude otherwise relevant evidence if its unfair prejudicial effect or its likelihood of confusing the issues substantially outweighs its probative value." *Id.* Moreover, for evidence to be admissible under this rule, "the omitted portion of the statement must be 'on the same subject' and must be 'necessary to make it fully understood.'" *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011) (quoting *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004)); *see Walters*, 247 S.W.3d at 218.

DISCUSSION

During cross-examination, defense counsel asked the child victim several, specific questions about statements she made during the forensic interview at the Child Advocacy Center. These questions were designed to challenge the credibility of the child victim regarding the circumstances and timing of the offenses. In response to the cross-examination of the child victim regarding purportedly inconsistent statements made during the forensic interview, the State offered, and the trial court admitted into evidence

under the rule of optional completeness, the entire video recording of the child victim's forensic interview.

When defense counsel pursues a subject or line of questioning that would ordinarily be outside of the realm of proper comment for the State, the defense "opens the door" and creates a right of reply for the State. *Tovar v. State*, 221 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "A party who opens a door to an issue 'cannot complain when the opposing party desires to go into details of that subject.'" *Id.* (quoting *Sherman v. State*, 20 S.W.3d 96, 101 (Tex. App.—Texarkana 2000, no pet.)). In a case involving whether a video recording of a child victim's forensic interview was admissible under the rule of optional completeness, the First Court of Appeals held that the State is entitled to the admission of such a video recording when: (1) defense counsel asks questions concerning some of the complainant's statements on the recording; (2) defense counsel's questions leave the possibility of the jury receiving a false impression from hearing only part of the conversation, with statements taken out of context; and (3) the recording is necessary for the conversation to be fully understood. *Id.* at 190-91. However, even when defense counsel's questions relate to the complainant's statements on the recording, the rule of optional completeness does not permit the State to introduce the record when: (1) the recording is unnecessary to show the context of the statement, such as showing the absence of a statement by the complainant rather than the existence of a directly contradictory statement; and (3) admission of the recording would likely

create confusion, such as when the recording references extraneous offenses. *Id.* at 191 (citing *Sauceda*, 129 S.W.3d at 121-24).

Assuming, without deciding, that the trial court erred by admitting the entire recording of the child victim's forensic interview under the rule of optional completeness, we must determine whether the purported error requires reversal of the trial court's judgment of conviction. *See* TEX. R. APP. P. 44.2. Because the erroneous admission of hearsay evidence is not constitutional error, we apply the standard set out in Texas Rule of Appellate Procedure 44.2(b) and disregard the error if it did not affect the defendant's substantial rights. *See id.* at R. 44.2(b); *Campos v. State*, 317 S.W.3d 768, 779 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (noting that the erroneous admission of a hearsay statement constitutes non-constitutional error subject to a harm analysis). A defendant's substantial rights are affected when the error had a substantial and injurious effect in determining the verdict. *Campos*, 317 S.W.3d at 779 (citing *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001)). We should not overturn a conviction for such error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or had but a slight effect. *Id.*; *see Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002).

In conducting the harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might

be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005); *see Motilla*, 78 S.W.3d at 355-56.

The erroneous admission of evidence is harmless if other evidence proving the same fact is properly admitted elsewhere, or the evidence comes in elsewhere without objection. *Land v. State*, 291 S.W.3d 23, 28 (Tex. App.—Texarkana 2009, pet. ref'd); *see Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) ("[A]ny error in admitting the [hearsay] evidence was harmless in light of other properly admitted evidence proving the same fact."); *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) ("It is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence."). "In situations where a video recording is improperly admitted, yet the recording is cumulative of the victim's properly admitted live testimony on the same issue, courts often disregard the error, reasoning that it could not have affected the appellant's substantial rights." *Land*, 291 S.W.3d at 29; *see Mick v. State*, 256 S.W.3d 828, 832 (Tex. App.—Texarkana 2008, no pet.) (holding that because a video recording of the interview of a child complainant was cumulative of the child's properly admitted trial testimony and discussed the same subject, any error in admission of the video recording did not

affect the defendant's substantial rights and was harmless); *Matz*, 21 S.W.3d at 912-13 (same).

During her trial testimony, the child victim described the instances of sexual abuse perpetrated by Modester. Specifically, the child victim, who was eleven years old at the time of trial, recounted that Modester had "intercourse" with her on multiple occasions while she and Modester were hiding in her father's closet and her brother's closet during games of hide and seek. The child victim described how and when the sexual abuse occurred. The State also asked the child victim if she remembered speaking to a forensic interviewer at the Children's Advocacy Center. The child victim did not remember the interview or watching any video recording of the interview.

On cross-examination, defense counsel challenged the credibility of the child victim by asking the child victim if she remembered telling the forensic interviewer that she said, "Oh, yeah, me too," after her father's girlfriend told her about "being raped" herself. Defense counsel also asked if the child victim remembered telling the forensic interviewer that the sexual abuse first occurred when she was in Ms. Dagg's third-grade class. The child victim denied that that was not when it first happened, to which defense counsel responded, "So you don't remember telling that to the interviewer?" The child victim responded, "Yes, ma'am." Defense counsel later inquired if the child victim remembered: (1) "telling the interviewer that [Modester] would give a game to distract you do you could play while this was happening"; (2) "telling the forensic interviewer

you were nonbinary"; and (3) "talking to the forensic interviewer about being placed in different poses." The child victim answered these questions in the negative.

Defense counsel's cross-examination of the child victim created a false impression that the child victim gave an inconsistent version of the events. But the State did not limit the portion of the video recording of the forensic interview played to those apparent inconsistencies; rather, the State played the entire recording.

That recording, however, was mostly cumulative of properly admitted trial testimony, especially the testimony of the child victim, and discusses the same subject.[2] It also provided context for the impressions of inconsistency developed during cross-examination. We further note that the State did not emphasize the video recording of the forensic interview during voir dire or closing argument. Rather, defense counsel emphasized the inconsistencies in the child victim's statements at trial and in the forensic interview during closing argument, and the State merely responded to that argument by referring the jury to what they observed in the video recording of the forensic interview.

When we consider the entire record, as we must when conducting a harm analysis under Texas Rule of Appellate Procedure 44.2(b), we have fair assurance that any error in admitting the entire video recording of the child victim's forensic interview did not

---

[2] We also note that there is ample evidence to support Modester's convictions, including testimony from the child victim and other witnesses. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (providing that the testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault); *see also Bautista v. State*, 605 S.W.3d 520, 525 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (stating that the uncorroborated testimony of a victim if sufficient to support a conviction for aggravated sexual assault of a child).

influence the jury or had but a slight effect. *See* TEX. R. APP. P. 44.2(b); *Campos*, 317 S.W.3d at 779; *Mick*, 256 S.W.3d at 832; *Matz*, 21 S.W.3d at 912-13. Therefore, we conclude that any error in the admission of the forensic interview did not affect Modester's substantial rights and, therefore, must be disregarded. *See* TEX. R. APP. P. 44.2(b). Accordingly, we overrule Modester's second issue.

## Conclusion

Having overruled both of Modester's issues on appeal, we affirm the judgments of the trial court.


STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson,
     and Justice Smith
     (Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed March 22, 2023
Do not publish
[CRPM]

* (Chief Justice Gray concurs in the Court's judgment as it relates to the trial court's April 22, 2022 judgment. A separate opinion will not issue.)

