# NO. 12-22-00180-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *REGINALD MONTRELIA WICKWARE, APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Reginald Montrelia Wickware, appeals his conviction for aggravated sexual assault of a child. In four issues, he alleges that his right to a speedy trial was violated, the trial court improperly admitted testimony, and the evidence is legally insufficient to support his conviction. We affirm.

## BACKGROUND

On October 16, 2019, A.P., then an eleven-year-old child, reported to her school counselor that Appellant, her mother's dating partner,[1] sexually assaulted her earlier that month. Following further investigation by law enforcement, Appellant was arrested on June 16, 2020, and indicted on September 17, for the offense of aggravated sexual assault of a child on September 17. Appellant pleaded "not guilty" to the offense and "true" to two enhancement paragraphs regarding his previous convictions for felony offenses.

### Pretrial Delays

On January 27, four days before Appellant's trial setting, Appellant moved for a continuance because his COVID quarantine prevented him from reviewing discovery with his

---

[1] Appellant is referred to as A.P.'s stepfather multiple times in the record of this case. However, Appellant was not married to A.P.'s mother during the events alleged in the indictment.

attorney. The trial court granted the continuance and set trial for February 28. Trial did not proceed on February 28, although defense counsel announced ready, because another case was ahead of Appellant's. That same day, Appellant filed his Motion for Speedy Trial. He requested trial "as soon as possible before May 23, 2022," and contended that he would be prejudiced if trial was not held before this date because his mother was ill and not expected to live past that time. Appellant noted that he was held in the Smith County Jail not only for the charged offense, but also on a parole revocation warrant based on the alleged offense, and could not seek to have that warrant recalled until the resolution of his case.

On March 7, the trial court held a very brief hearing on the motion. The State explained that for the majority of the time since Appellant's arrest, he had been in federal custody and therefore could not be brought to trial, and that the detainer was lifted on May 15, 2021. Defense counsel noted that Appellant was acquitted of the charge for which he had been in federal custody. The court explained that the earliest available date for Appellant's trial would be May 23, 2022, because all earlier dates were assigned for trials of individuals who had been imprisoned for substantially longer than Appellant. At the conclusion of the hearing, in response to defense counsel re-urging Appellant's speedy trial motion, the trial court stated, "Well, to the extent I can grant it and set you on the 23rd, I'll grant it and set you on the 23rd. To the extent I can't grant it before the 23rd, I guess I'll deny it. I don't know if you need a specific ruling other than that, but we'll grant you the speediest trial we can get, which is going to be May 23rd." The court did not enter a written order.

On March 22, the State moved for a continuance based upon the unavailability of an expert witness, Dennis Mathews, during the entire month of May. At an April 25 hearing on the State's motion, defense counsel re-urged Appellant's desire to go to trial as soon as possible. However, trial could not begin that day, because an insufficient number of people presented for jury duty. Therefore, trial was rescheduled to June 20.

**Trial**

On the day trial began, the trial court and parties arrived early for an outcry witness hearing pursuant to Article 38.072 of the Texas Code of Criminal Procedure. However, that hearing did not proceed because the State withdrew its Article 38.072 motion, citing additional research and a desire to respect the court's and the jury's time.

Chamecca Reeves, the counselor at A.P.'s former middle school, testified that A.P. was referred to her on October 16, 2019 because she wrote a note indicating that she "wanted to die." Defense counsel initially objected to Reeves's testimony about the contents of the note as hearsay. The State responded that the testimony was admissible to show A.P.'s then-existing mental condition. The trial court overruled the objection. Defense counsel requested and received a running hearsay objection to Reeves's testimony. Reeves stated that A.P. told her that she wanted to die because of trouble at home, and specifically because her stepfather was physically abusing her. When asked about the exact nature of the abuse, A.P. spelled out the word "rape." A.P.'s statements triggered Reeves's duty as a mandatory reporter, so she reported the situation to law enforcement.

Alma Leon, a forensic interviewer at the Children's Advocacy Center in Smith County, testified that she conducted a forensic interview with A.P. on October 16. When Leon asked A.P. why she was at the interview, A.P. said that she was there to talk about her stepfather, and again spelled out the word "rape." A.P. knew what that word meant because she discussed the situation with a friend, whose sister was a victim of rape. A.P. explained (in her own words and by pointing) that her stepfather touched her vagina and breasts, but did not make any explicit statements about penetration. Leon observed that A.P.'s demeanor was extremely timid, she did not provide much sensory detail, and she tended to mumble and avoid eye contact. However, she did not see evidence that A.P. was coached or that her statements were fabricated.

A.P.'s mother testified that she shared one child with Appellant, a son younger than A.P., and Appellant was not A.P.'s biological father. She learned of A.P.'s outcry through a call from law enforcement, and thereafter "went through" Appellant's cell phone (a regular practice because of her concerns about infidelity). She noticed that Appellant had been searching for information about how long DNA remains on the body. A.P.'s mother further testified that sometime prior to October 16, she had "the talk" about sex with A.P., during which she disclosed to A.P. that she had been raped by a family friend as a teenager.

A.P. testified that she wrote the note to her teacher because her mother's boyfriend, Appellant, touched her body in places she did not want to be touched. She specified that he used his hands to touch her "chest" and "privates," and affirmed that she used these words to mean her breasts and vagina. A.P. further stated that Appellant used his "private part" to touch her "private parts," and confirmed that when she referred to Appellant's "private part," she meant his

3

penis. She affirmed that Appellant tried to put his penis in her vagina, which made her uncomfortable and caused her pain, and that he instructed her, "Don't tell your mom."

Detective Michelle Brock (then of the Tyler Police Department) testified that she remotely observed A.P.'s forensic interview and, as a result, ordered an examination of A.P. by a Sexual Assault Nurse Examiner. Brock conducted a non-custodial interview with Appellant on October 22, and subsequently obtained a search warrant for a DNA sample and Appellant's cell phone. Appellant complied with the warrant but stated while turning over the phone that he reset the phone since the initial interview. Following her receipt of the SANE examination report, Brock drafted a warrant for Appellant's arrest on the charge of aggravated sexual assault of a child. The examination did not return any DNA, but in Brock's experience, the majority of SANE examinations do not result in the collection of DNA evidence.

Finally, Rebecca Fears, a Sexual Assault Nurse Examiner, testified that she examined A.P. on October 17, 2019. When Fears asked A.P. why she was there, A.P. was reluctant to speak, but used Fears's laptop to type out the word "rape."[2] When asked about the identity of her abuser, A.P. spelled out the word "stepdad," and then typed, "He tried to put his private in me." During her physical examination, Fears noted that A.P.'s hymen had been completely torn, in a location consistent with blunt force trauma and consistent with an adult man attempting to penetrate an eleven-year-old child's vagina with his penis. Fears stated that she had never seen this type of injury to a child resulting from anything other than sexual abuse.

The jury found Appellant "guilty," found the enhancement paragraphs "true," and imposed a sentence of life imprisonment. This appeal followed.

## MOTION FOR SPEEDY TRIAL

Appellant argues in his first and second issues that the trial court erred by failing to hold an evidentiary hearing on, and subsequently overruling, his motion for speedy trial.[3]

---

[2] Defense counsel objected to this statement as hearsay, which the trial court overruled, and thereafter requested and received a running objection.

[3] The State argues that the trial court granted Appellant's speedy trial motion by setting the case for trial on the earliest available date. Conversely, Appellant contends that the trial court overruled his speedy trial motion. A review of the motion reveals that Appellant's requested relief was that the court schedule trial "as soon as possible before May 23, 2022." Because the trial court scheduled Appellant's trial to begin *on* May 23, and therefore did not grant the requested relief, we understand the trial court's ruling as overruling Appellant's speedy trial motion.

**Standard of Review and Applicable Law**

The essential ingredient of the Sixth Amendment's speedy trial guarantee is "orderly expedition and not mere speed." *U.S. v. Marion*, 404 U.S. 307, 313, 92 S. Ct. 455, 459, 30 L. Ed. 2d 468 (1971) (Sixth Amendment right to speedy trial would appear to guarantee criminal defendant that Government will move with dispatch that is appropriate to assure him early and proper disposition of charges against him). Since 1972, United States Supreme Court precedent has required courts to analyze federal constitutional speedy trial claims "on an ad hoc basis" by weighing and then balancing four factors: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972). This balancing test requires weighing case by case "the conduct of both the prosecution and the defendant." *Id.* No single factor is a "necessary or sufficient condition to the finding" of a speedy trial violation. *Id.*, 407 U.S. at 533, 92 S. Ct. at 2193; *State v. Wei*, 447 S.W.3d 549, 553 (Tex. App.–Houston [14th Dist.] 2014, pet. ref'd). The related factors must be considered together with such other circumstances as may be relevant. *See Wei*, 447 S.W.3d at 553.

In reviewing the trial court's decision on Appellant's speedy trial claim, we apply a bifurcated standard of review. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). We review factual issues for abuse of discretion and review legal issues de novo. *Id.* Here, because the trial court denied Appellant's motion, we presume that it resolved any disputed fact issues in the State's favor and defer to these implied findings of fact that the record supports. *Id.*

**Necessity of Additional Hearing**

A trial court need not conduct a formal or specially designated hearing on a defendant's motion for speedy trial. *Taylor v. State*, 667 S.W.3d 809, 810 (Tex. Crim. App. 2023). And "the only requirement" for an appellate court to weigh the *Barker* factors is that the record contain the relevant information: "the length of the delay, reason for the delay, assertion of the right, and prejudice." *Id.* Notably, a record which fails to show whether and what type of prejudice the appellant may have suffered does not prevent the appellate court from weighing the factors; instead, this deficiency merely affects how the factors will be weighed. *Id.*

In this case, at the hearing on Appellant's motion, the trial court opened the floor to counsel to make "whatever record [counsel] felt like [they] needed to." The transcript indicates

Appellant was present, but he did not testify related to the motion, and defense counsel noted for the record only that Appellant had been incarcerated for over 600 days and had been acquitted of the previously pending federal charge. The record before us shows the length of the delay, the reasons provided for the delay, and Appellant's assertion of his right to a speedy trial. The record also contains Appellant's allegations regarding the prejudice he suffered. We conclude that this record is sufficient for us to perform the **Barker** balancing test, and that no further hearing before the trial court is necessary. For this reason, and because the trial court was not required to conduct a formal hearing on Appellant's motion, we overrule Appellant's first issue.

**Threshold Showing of Delay**

Before we engage in an analysis of each **Barker** factor, the defendant must first make a showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." **Gonzales v. State**, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (citing **Doggett v. U.S.**, 505 U.S. 647, 651–52, 112 S. Ct. 2686, 2690, 120 L. Ed. 2d 520 (1992)). "Presumptive prejudice" simply marks the point in which courts deem the delay unreasonable enough to trigger further inquiry. *See id*. (citing **Munoz**, 991 S.W.2d at 821–22). The length of the delay is measured from the time the defendant was arrested or formally accused. **State v. Thomas**, 453 S.W.3d 1, 4 (Tex. App.—Dallas 2014, no pet.) (citing **Shaw v. State**, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003)). In general, delay approaching one year is sufficient to trigger a speedy trial inquiry. **Doggett**, 505 U.S. at 652 n.1, 112 S. Ct. at 2686.

In this case, Appellant was arrested on June 16, 2020. Trial began on June 20, 2022. The time between Appellant's arrest and the start of trial was just over two years. Appellant has satisfied the threshold showing of delay, and the State admits that this factor weighs against it. *See* **Doggett**, 505 U.S. at 652 n.1, 112 S. Ct. at 2686 (stating that delay approaching one year is generally sufficient to trigger speedy trial inquiry); **Gonzales**, 435 S.W.3d at 808. Therefore, we must analyze the remaining **Barker** factors and balance them. *See* **Gonzales**, 435 S.W.3d at 808.

**Reasons for the Delay**

If a presumptively prejudicial delay has occurred, the State bears the initial burden of justifying the delay. **Emery v. State**, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994). Different weights are assigned to different reasons. **Munoz**, 991 S.W.2d at 822. A deliberate attempt to delay a trial, for example, is weighed heavily against the State, while more neutral reasons, such as negligence or overcrowded dockets, are still weighed against the State but less heavily, and

valid reasons do not weigh against the State at all. *Id.* If the record is silent regarding the reason for the delay, it weighs against the State but not heavily, because courts do not presume that the State has tried to prejudice the defense. ***Dragoo v. State***, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

The State contends, and Appellant does not dispute, that Appellant was in federal custody pending trial of an unrelated matter until May of 2021. The State further argues, without citation to any relevant law, that the existence of the federal detainer meant that Appellant could not be brought to trial on the state charge. Appellant notes that the State could have applied for a writ of habeas corpus *ad prosequendum* to secure Appellant's release into state custody for the purposes of trial. The record shows no such application and lacks evidence of any efforts by the State to acquire custody of Appellant for trial, and because the burden of excusing a delay rests with the State, this omission weighs against the State. *Id.* However, neither does the record indicate that the State's failure to secure Appellant's presence was a deliberate attempt to delay trial. For this reason, we will not weigh this period of delay as heavily as we would were there evidence of bad faith or intentional conduct on the State's part. *Id.*; ***Dean v. State***, No. 12-03-00074-CR, 2004 WL 1486154, at *3 (Tex. App.—Tyler June 30, 2004, pet. ref'd) (mem. op., not designated for publication).

Trial did not proceed as scheduled on January 31, 2022 because Appellant requested a continuance. Although Appellant's COVID quarantine was not his fault, neither was it the fault of the State. The period of delay between the original trial setting and February 28 therefore does not weigh against the State. Appellant's trial also did not proceed as scheduled on February 28 because another case was ahead of Appellant's on the court's docket. The delay between February 28 and May 23 (the date for which Appellant's trial was reset) is therefore attributable to a neutral reason and weighs against the State only slightly. Finally, the delay between May 23 and June 20 is the result of the State's motion for continuance. This was the State's only request for a continuance, and the request was due to the unavailability of a material witness on the trial date. We do not conclude that this was a deliberate attempt to delay Appellant's trial, but rather a delay for a neutral reason out of the control of either party, and therefore it weighs only slightly against the State.

Appellant asserts that the State did not present any evidence of the reasons for the pretrial delays at the hearing on his motion for speedy trial and, specifically, failed to explain why the

7

alleged federal detainer meant that Appellant could not be tried for the state charge.[4]  The record contains both Appellant's and the State's respective motions for continuance, as well as a transcript of the court proceedings on February 28.  Assuming *arguendo* that we must presume no valid reason for the period of delay wherein Appellant was in federal custody, the result would be the same—this delay would weigh against the State, but not heavily, because we do not assume that the State intentionally acted to prejudice the defense.  *Dragoo*, 96 S.W.3d at 314.

**Assertion of the Right to a Speedy Trial**

Under *Barker*, a defendant is responsible for diligently asserting or demanding his right to a speedy trial.  *See Barker*, 407 U.S. at 528–29, 92 S. Ct. at 2191.  Although a defendant's failure to assert his speedy trial right does not amount to a waiver of that right, failure to assert the right makes it difficult for a defendant to prove he was denied a speedy trial.  *Dragoo*, 96 S.W.3d at 314.  This is because a defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial and that he was not prejudiced by a lack thereof.  *See id.*  The longer the delay between arrest and the assertion of the right, the more likely it becomes that a defendant would take some action to obtain a speedy trial, and the more we can assume the defendant did not actually desire a speedy trial.  *Id.*; *Lovelace v. State*, 654 S.W.3d 42, 49 (Tex. App.—Amarillo 2022, no pet.).  Inaction weighs more heavily against a violation the longer the delay becomes.  *Dragoo*, 96 S.W.3d at 314.

Appellant was originally arrested on June 16, 2020, but did not assert his right to a speedy trial until approximately twenty months later.  Appellant's delay in pursuing a speedy trial, as well as the fact that trial occurred slightly less than four months following his assertion of the right, result in this factor weighing against Appellant.  *See Kelly v. State*, 163 S.W.3d 722, 729 (Tex. Crim. App. 2005) (delay of one year weighed against defendant; trial occurred two months later); *see also Wade v. State*, No. 02-21-00125-CR, 2023 WL 2534468, at *8 (Tex. App.—Fort Worth Mar. 16, 2023, pet. ref'd) (mem. op., not designated for publication) (delay of twenty months weighed against defendant).

**Prejudice**

The last *Barker* factor is "prejudice to the defendant."  *Barker*, 407 U.S. at 532–33, 92 S. Ct. at 2193–94. Prejudice is assessed in light of the interests that the speedy trial right is designed

---

[4] We note that Appellant similarly did not present any evidence at the hearing, and that his motion for speedy trial was unverified and unaccompanied by any supporting exhibits (although the defendant bears the burden of proof on the latter two *Barker* factors).

to protect. *Id.* These interests are (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused accompanying public accusation, and (3) limiting the possibility that the defense will be impaired. *Id.* Of these interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Even so, the four *Barker* factors are interrelated and must be considered together with such other circumstances as may be relevant. *See Munoz*, 991 S.W.2d at 828. The court still must engage in a difficult and sensitive balancing process. *Id.* Although a defendant has the burden to make some showing of prejudice, actual prejudice is not required. *Id.* at 826. When a defendant makes a prima facie showing of prejudice, the state must prove that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay. *Id.*

In his speedy trial motion, Appellant did not offer any argument or evidence suggesting either that he was subject to oppressive pretrial incarceration or that his defense was in any way impaired by the delay. The motion indicates that he has been incarcerated since his arrest, but he makes no statement or argument regarding the oppressiveness of that incarceration, the length of which alone does not excuse Appellant from showing prejudice.[5] Appellant's sole explicit contention regarding prejudice was that his mother was terminally ill and unlikely to live until the May 23, 2022, trial setting, although Appellant did not testify or present any other evidence related to this assertion. Appellant does not offer any additional argument regarding prejudice on appeal. While we acknowledge that Appellant suffered some prejudice from his pretrial incarceration, such prejudice standing alone is not enough to support his claim that his speedy trial rights were violated. *Lovelace*, 654 S.W.3d at 50. And although we may infer that the health of Appellant's mother may have caused him some anxiety and concern during the period he awaited trial, Appellant does not explicitly argue that he suffered any such anxiety or concern. Moreover, anxiety related to a family member's illness does not appear to be the type of anxiety contemplated by the *Barker* factors, which courts have generally assessed as anxiety related to being accused of a crime. *See Barker*, 407 U.S. at 533, 92 S. Ct. at 2193 (person awaiting a criminal trial is "living under a cloud of anxiety, suspicion, and often hostility" and may

---
[5] Although the delay in the present case triggers a speedy trial analysis of the *Barker* factors, it is not long enough for Appellant to be relieved from proving prejudice. *See Jimerson v. State*, 629 S.W.3d 569, 579 (Tex. App.—Tyler 2021, no pet.) (collecting cases); *Compass v. State*, No. 02-06-00075-CR, 2007 WL 2067733, at *3 n.28 (Tex. App.—Fort Worth July 19, 2007, no pet.) (mem. op., not designated for publication) ("We decline to hold that a twenty-nine-month delay is presumptively prejudicial.").

experience "public scorn"); ***Shaw***, 117 S.W.3d at 890 (prejudicial anxiety or concern is beyond the level normally *associated with being charged with a crime*). In summary, on this record, the trial court could have reasonably concluded that Appellant failed to make the requisite showing of prejudice. Therefore, this factor weighs against finding a violation of his right to a speedy trial.

**Balancing the *Barker* Factors**

We now consider and weigh the aforementioned factors. The defendant's burden of proof on the latter two factors "varies inversely" with the State's degree of culpability for the delay, and thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial. ***Cantu v. State***, 253 S.W.3d 273, 280–81 (Tex. Crim. App. 2008). As the State concedes, the length of delay weighs against it. The second factor also weighs against the State, though not heavily, because several months of the delay were explained by neutral reasons, and there is no evidence in the record of bad faith on the State's part or any deliberate attempt to delay trial by allowing Appellant to remain in federal custody. Although Appellant filed a motion for speedy trial, he did not do so until approximately twenty months after his arrest. Finally, Appellant failed to demonstrate prejudice and the record does not support a finding that Appellant's ability to defend his case was compromised by the delay.

Weighing all of the factors together in a de novo balancing analysis, viewing the evidence in the light most favorable to the trial court's ultimate ruling, and bearing in mind that dismissal is a radical remedy, we conclude that Appellant failed to establish a violation of the right to a speedy trial. *See **Shaw***, 117 S.W.3d at 891. We overrule Appellant's second issue.

## ADMISSION OF OUTCRY WITNESS TESTIMONY

In his third issue, Appellant contends that the trial court erroneously allowed an outcry witness to testify without conducting a hearing, outside the presence of the jury, regarding the witness's reliability.

**Standard of Review and Applicable Law**

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. ***Moses v. State***, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); ***Manuel v. State***, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd). If the ruling is within the zone of

reasonable disagreement, an appellate court will not disturb it. *Manuel*, 357 S.W.3d at 74. It is well settled that the admission of hearsay evidence does not constitute reversible error if the same facts were proven by other properly admitted evidence. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Lee v. State*, 639 S.W.3d 312, 316 (Tex. App.—Eastland 2021, no pet.) (outcry witness testimony admitted without required hearing harmless when victims' testimony addressed the same facts); *see also Flores v. State*, 513 S.W.3d 146, 165 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (improper admission of testimony was harmless because same or similar evidence was admitted without objection elsewhere).

The Texas Code of Criminal Procedure allows the admission of a hearsay statement describing sexual abuse made by a child victim to an outcry witness. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West 2023). Section 2(b) sets out the requirements for the admission of an outcry witness's testimony, specifically requiring "that the trial court find[ ], in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." *Id.*; *see Sanchez v. State*, 354 S.W.3d 476, 487–88 (Tex. Crim. App. 2011). A trial court commits error if it overrules a hearsay objection to an outcry witness's testimony without first conducting a hearing. *Lee*, 639 S.W.3d at 316.

**Analysis**

Appellant challenges the trial court's admission of Reeves's testimony because the court did not conduct the hearing required by Article 38.072 to ascertain the reliability of A.P.'s outcry statement. The provisions of Article 38.072 are mandatory and must be complied with for the outcry statement to be admissible over a hearsay objection. *Duncan v. State*, 95 S.W.3d 669, 671 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Because the trial court did not first hold a hearing to determine whether the statement was reliable, as required by the statute, the trial court erred by admitting A.P.'s statement to Reeves. *Id.*; TEX. CODE CRIM. PROC. ANN. art. 38.072.

Having determined that the trial court erred, we must now determine whether the error is reversible under appellate Rule 44.2(b), which applies to nonconstitutional errors. *See* TEX. R. APP. P. 44.2(b); *see also Campos v. State*, 317 S.W.3d 768, 779 (Tex. App.–Houston [1st Dist.] 2010, pet. ref'd) (the erroneous admission of a hearsay statement constitutes nonconstitutional error). Under Rule 44.2(b), an appellate court must disregard a nonconstitutional error unless the error affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). An appellate court should not overturn a criminal conviction for nonconstitutional

error "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Id.* (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)).

The improper admission of evidence is harmless when the same facts are proven by other properly admitted evidence. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *Lee*, 639 S.W.3d at 316. Here, other witnesses attested to the limited facts related by Reeves at trial. Reeves testified that A.P. told her that her stepfather was physically abusing her and spelled out the word "rape" to describe the abuse. Similarly, Leon testified, without objection, that A.P. said she was at the forensic interview to discuss her stepfather, and spelled the word "rape" again. Although Appellant emphasizes that A.P.'s testimony was "timid," and did not use the word "rape," A.P. affirmed at trial (without objection) that Appellant attempted to penetrate her vagina with his penis. Finally, Fears testified that she discovered during the SANE examination that A.P.'s hymen was fully transected, and that such an injury was consistent with sexual abuse, specifically attempted penetration. Because the facts related by Reeves were also addressed in the testimony of Leon, Fears, and A.P. herself, the failure of the trial court to conduct a reliability hearing under Article 38.072 was harmless. *See Duncan*, 95 S.W.3d at 671. Consequently, we overrule Appellant's third issue.

## SUFFICIENCY OF THE EVIDENCE

Appellant argues in his fourth issue that the evidence was legally insufficient to support his conviction.

### Standard of Review and Applicable Law

When reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Brooks v. State*, 323 S.W.3d 893, 898-99 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). When the record supports conflicting inferences, a reviewing court must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the accused's guilt. *Id.* The jury is the

sole judge of the credibility of the witnesses, and can believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances; the duty of a reviewing court is to ensure that the evidence presented supports a conclusion that the defendant committed the crime charged. *See Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.); *see also Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense(s) as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

A person commits aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means if the victim is younger than fourteen years of age. TEX. PENAL CODE ANN. § 22.021 (West 2023). The testimony of a child complainant, standing alone and without corroboration, may be sufficient to support a conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West 2023).

**Analysis**

Appellant states in his initial brief that the evidence was legally insufficient to support the verdict because the indictment identifies the victim as A.P., but the "jury never received evidence that the victim was A.P." In his reply brief, however, he recharacterizes this point of error as arguing generally that "the State simply did not establish that A.P. suffered the acts alleged," and re-urges a general legal insufficiency of the evidence challenge.

Appellant does not dispute that A.P. would have been younger than fourteen years of age at the time of the alleged offense, and the record shows that A.P. was eleven years old on or about October 1, 2019. A.P. testified that Appellant touched her "chest" and "privates" against her will and affirmed that those terms referred to her breasts and vagina. She confirmed that her reference to Appellant's "privates" meant his penis, answered "yes" clearly when asked if

Appellant touched her private parts with his private parts, answered "yes" when asked if Appellant attempted to put his penis inside her vagina, and stated that this caused her pain. Further, the record contains medical evidence that A.P.'s hymen was completely torn, which was consistent with her statement about the nature of the assault, as well as testimony that Appellant used his cell phone to research the longevity of DNA evidence on the body and then attempted to clear information from that cell phone before relinquishing it to law enforcement. Although Appellant asserts that A.P.'s testimony was too "timid, reserved, and general" to establish the elements of the offense, it is the jury's province to determine the credibility of the child victim and other witnesses and the weight to be given to that evidence, and we may not substitute our own credibility determination for that of the trier of fact. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

After reviewing all of the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient. A.P.'s testimony is evidence of the assault, and although not required, it is supported by corroborating circumstantial evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a). We are satisfied that a rational jury could find the essential elements of the offense beyond a reasonable doubt and that the evidence is legally sufficient to support the verdict. *See Brooks*, 323 S.W.3d at 898-99. Accordingly, we overrule Appellant's fourth issue.

## DISPOSITION

Having overruled each of Appellant's four issues, we ***affirm*** the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered August 31, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 31, 2023**

**NO. 12-22-00180-CR**

**REGINALD MONTRELIA WICKWARE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-1549-20)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*